# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| **DUSTIN KITTLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 1:24-cv-00025** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **DONALD J. TRUMP, in his official** | ) | **MAGISTRATE JUDGE HOLMES** |
| **capacity as President of the United** | ) | |
| **States, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Pending before the Court is Defendants' Motion to Dismiss the Third Amended Complaint (Doc. No. 55), which is fully briefed (*see* Doc. Nos. 65, 66). For the reasons stated herein, the Motion will be **GRANTED**.

## I.    BACKGROUND[1]

### A.  Plaintiff's Interaction with the Farm Credit Administration

The Farm Credit System includes a network of cooperative banks and associations that provide credit to farmers, ranchers, and agricultural producers. (¶ 22). The Farm Credit Administration ("FCA"), is an independent agency of the executive branch that regulates Farm Credit System Institutions. (¶ 23); and 12 U.S.C. §§ 2241-2243. The FCA has enforcement authority with regard to violations of laws, rules, regulations by System institutions and those participating in the conduct of the affairs of such institutions. *See* 12 U.S.C. § 2261(a), *et seq*.

---

[1]    Unless otherwise indicated, all facts are as alleged in the Third Amended Complaint ("TAC" or "Complaint") (Doc. No. 53), which is cited as "TAC" or simply by paragraph number.

Plaintiff Dustin Kittle is former borrower of Alabama Farm Credit, ACA ("AFC"), a Farm Credit System institution. (¶¶ 8, 90). In July 2021, as part of an attempt to refinance a loan with AFC, Kittle "discovered concerns over AFC's handling of his initial loans" and requested a copy of his loan file, appraisals of collateral, and AFC's Charter and Bylaws. Kittle claims AFC's president, Chris Glenos, refused to provide the requested documents unless Kittle signed a release of legal claims and said AFC would not accept new credit applications from Kittle while he was threatening or pursuing legal claims against AFC. (¶¶ 91-95).

Kittle submitted a borrower complaint to FCA on August 24, 2021. (¶ 96). FCA informed Kittle that "the complexity of the issues raised affects how long our review takes, but we strive to provide a response within 60 days." (*Id*.; TAC, Ex. C). FCA also stated;

> Please understand that we cannot offer you any specific advice on the matters raised in your complaint. The law does not allow us to function as a consumer advocacy bureau. We do not adjudicate disputes between System institutions and borrowers, and we cannot provide legal advice. We also have no authority to provide monetary relief.

> However, as an arm's length regulator, we can interact directly with System Institutions when there is a concern that they have violated a law or regulation. If we find that a violation has occurred, we will use our examination and enforcement authorities to require corrective action. Our findings are confidential and protected from general release under 12 C.F.R. 602.2 and 5 U.S.C. § 552(b)(8).

(TAC, Ex. C).

AFC continued to refuse to accept new loan applications from Kittle citing "unresolved legal claims," and, on November 8, 2021, AFC placed Kittle's loans in distress despite Kittle never missing a payment. (¶¶ 97, 100, 103, 105). Kittle communicated these developments to the FCA on an ongoing basis. (¶¶ 99, 101, 102-04, 108-09). The FCA responded that it was "making every effort to thoroughly investigate the matters" and that they would provide "periodic updates on the status of [their] review." (¶ 110). On December 1, 2021, Kittle paid off his loans with AFC "to

2

avoid the wrongful foreclosure of his farm and home." (¶ 112). To do so, Kittle had to liquidate assets and obtain financing on less favorable terms through a non-Farm Credit lender. (¶ 113). He claims this was "[d]ue to the FCA's complete and utter failure to use its examination and enforcement authorities to require corrective action [from AFC]." (¶ 112).

FCA continued to provide Kittle periodic communications stating that it was "still reviewing [his] concerns." (¶ 115-120). On January 26, 2023, Kittle submitted a request to the FCA Office of Inspector General requesting review of the FCA's handling of his complaint. (¶¶ 121-122). On April 13, 2023, the FCA OIG responded that it had reviewed the complaint regarding the FCA's review of his complaint and "[b]ased on our review the agency is still in the process of reviewing [the] borrower complaint. **FCA policy establishes a general expectation that borrower complaints receive a final response within 60 days**, though notes that this timeframe is a goal, with response times depending on, among other things, the complexity of the complaint and the need to obtain additional information from the complainant or institution." (¶ 129 (emphasis in original)).

Kittle received the FCA findings from his August 2021 complaint in a response letter dated June 12, 2023. In the letter, FCA notes that it is "aware that since you first wrote to us you have paid off your loans with the association, thereby ending the lending relationship." (*See* ¶ 134 (citing Compl., Ex. D)). As a result of its examination of Kittles' complaints, the FCA found AFC failed to comply with statutes or regulations on multiple occasions.[2] (*See* ¶ 137 (citing Compl., Ex. D)). The response letter indicates that some of these violations were addressed with AFC, but, for the most part, does not reference any enforcement action toward AFC. (*Id*.). With regard to enforcement, AFC states that, in its role as a "regulator for the System," if it finds "that System

---

[2]      The FCA also found that some of Kittle's complaints were unfounded, resulted from misunderstandings, or were business decisions. (Compl., Ex. D).

institutions have violated applicable laws or regulations, [it] has several enforcement options to bring about corrective actions, including requiring management to address weakness in internal processes that led to those violations. However, FCA's authority does not include providing monetary or personal relief to an applicant or borrower." (*See* Compl., Ex. D).

Kittle contends that, despite finding that AFC's actions violated his rights under the Farm Credit Act and Equal Credit Opportunity Act, the FCA "is maintaining its refusal to afford [Plaintiff] his rights and protections under the Farm Credit Act through its enforcement authorities." (¶ 138).

Kittle faults the FCA taking too long (more than 60 days) to investigate his complaint and for failing to take enforcement action against AFC. He brings claims against the FCA for negligence under the Federal Tort Claims Act (Count Three), violation of his Fifth Amendment Due Process Rights (Count Four), mandamus to order FCA to enforce the Equal Credit Opportunity Act ("ECOA") against AFC (Count Five), breach of fiduciary duty (Count Six), under the Administrative Procedures Act ("APA") (Counts Seven, Eight, Nine, and Ten). Kittle asks the Court to issue a writ of mandamus directing FCA and FCA Board Chairman Jeffrey Hall to exercise their enforcement authority to require AFC to correct the ECOA violations identified in FCA's June 12, 2023 findings. (TAC at PageID # 1018-19). He also seeks money damages of at least $4,800,000 for economic losses caused by FCA's alleged negligence, a declaration that FCA unlawfully withheld and unreasonably delayed agency action in violation of the APA, a declaration that FCA's failure to take enforcement action is arbitrary, capricious, and contrary to law, a declaration that FCA and Hall violated his due process rights, and an order directing FCA to establish a formalized process for timely resolution of borrower complaints and to take enforcement action. (*Id*. at PageID # 1019).

## B. Presidential Appointments to the FCA Board

The FCA is governed by a three-member Board, the members of which are appointed for six-year terms. 12 U.S.C. § 2242(a). Members are term limited to one term. *Id*. at § 2242(b) However, a Board member may stay in holdover status until the succeeding Board member is appointed. *Id*. ("Any member of the Board shall continue to serve as such after the expiration of the member's term until a successor has been appointed and qualified.").

In January 2021, the board consisted of two members, Glen Smith, who was confirmed in 2017, and Jeffrey Hall, who was confirmed in 2015 and serving in holdover status. (¶ 28). Former Board chairman Dallas P. Tonsager passed away in May 2019, leaving a vacancy that had not been filled. (*Id*.). In 2019 and 2020, President Trump nominated Rodney K. Brown to fill Hall's position, but Brown was not confirmed by the Senate and Hall remained in holdover status. (¶ 166). The Board remained with only two members, Hall and Smith, until President Biden appointed Vincent G. Logan in October 2022. (¶ 31). In May 2024, President Biden appointed Marcus D. Graham to replace Smith, whose term expired in 2022, but Graham was not confirmed by the Senate. (¶¶ 35-36). Logan retired effective March 31, 2025.[3] Hall was named board chairman and CEO by President Trump on January 20, 2025. The FCA Board currently has two board members – Hall and Smith.

Plaintiff claims that his "loss of statutory borrower rights, economic injury from forced loan repayment, and the inability to seek redress due to the FCA's impaired enforcement capacity"

---

[3]     The Court takes judicial notice of the historic and current composition of the FCA Board as reported on the official website of the FCA – fcsic.gov. *See* FCA News Release: Board Member Vincent Logan Leaves Enduring Legacy at FCA, (March 13, 2025), available at https://ww3.fca.gov/news/Lists/News%20Releases/Attachments/723/NR-25-05-03-13-25.pdf (reporting Logan's retirement); *See* https://www.fcsic.gov/about/jeffery-s-hall (about Hall); https://www.fcsic.gov/about/leadership (current FCA Board Leadership as of February 16, 2026).

were caused by President Biden's dereliction of duty in failing to appoint a "full FCA Board" and Hall's continued service on the Board. (¶¶ 153, 174).

Plaintiff asserts claims for declaratory relief against the President and Hall (Counts One and Two).[4] He seeks a declaratory judgment that President Biden violated 12 U.S.C. § 2442(a) and Article II, Section 3 of the United States Constitution by failing to appoint all positions on the FCA Board and that Hall's "service on the FCA Board beyond October 13, 2021, violates the one-term limit of 12 U.S.C. § 2242(a). (TAC at PageID # 1017-18). He contends a declaratory judgment is necessary to establish President Biden's inaction was unlawful, confirm Hall's tenure as unlawful, to guide future Executive action to prevent a recurrence of harm, to ensure compliance with the Farm Credit Act, and to protect the Plaintiff's rights. (¶¶ 157, 177).

## C. Claims Against the Inspector General of the FCA

The TAC also asserts claims against the Inspector General of the Farm Credit Administration.[5] (¶¶ 18-20; 188-195; 235-250 (Counts Four, Eleven, Twelve, and Thirteen)). Plaintiff concedes dismissal of the claims against the Inspector General. (Doc. No. 65 at 2, n.1). Accordingly, these claims will be dismissed.

Defendants move to dismiss the remaining claims.

---

[4]     The Complaint originally named Joseph Biden. Because the claims are brought against the President of the United States in his official capacity, Donald J. Trump has been substituted as Defendant. (*See* Order, Doc. No. 58).

[5]     The Complaint originally named Wendy Laguarda, then Inspector General of the Farm Credit Administration. Because the claims are brought against Wendy Laguarda in her official capacity, the current inspector general is the proper defendant. Accordingly, in June 2025, Nicholas Novak was substituted as Defendant. (*See* Order, Doc. No. 58). As of September 2025, Stephen H. Ravas is the Acting Inspector General. *See* https://www.fca.gov/about/offices (last visited Feb. 20, 2026).

## II.    STANDARD OF REVIEW

### D.  Subject Matter Jurisdiction

Rule 12(b)(1) "provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Whether a court has subject-matter jurisdiction is a "threshold determination" in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)); *see also Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (explaining that courts "are 'bound to consider [a] 12(b)(1) motion first, since [a] Rule 12(b)(6) challenge becomes moot if th[e] court lacks subject matter jurisdiction" (quoting *Moir v. Greater Cleveland Reg'l Transit Auth*., 895 F.2d 266, 269 (6th Cir. 1990))).

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). "Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities." *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Id.* (quoting *Munaco v. United States*, 522 F.3d 651, 652-53 (6th Cir. 2008)). "Sovereign immunity 'extends to agencies of the United States' or 'federal officers [acting] in their official capacities.'" *Id*. (citing

7

*Whittle v. United States*, 7 F.3d 1259, 1262 (6th Cir.1993); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir.1994)). "A waiver of sovereign immunity may not be implied and exists only when Congress has expressly waived immunity by statute." *Id*. (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992)).

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright*, 751 F.3d at 759. A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Wayside Church*, 847 F.3d at 816–17 (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co*., 491 F.3d 320, 330 (6th Cir. 2007)). A factual attack challenges the allegations supporting jurisdiction, raising "a factual controversy requiring the district court to 'weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id*. at 817 (quoting *Gentek Bldg. Prods., Inc*., 491 F.3d at 330). Defendants assert factual attacks on the Court's subject matter jurisdiction.

**E.  Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*.  In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as

8

true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Thus, dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Guzman v. U.S. Dep't of Children's Servs.*, 679 F.3d 425, 429 (6th Cir. 2012).

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to a defendant's motion to dismiss provided they are referred to in the Complaint and are central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008).

## III.    ANALYSIS

### A.  Count One

In Count One, Plaintiff claims the President has violated 12 U.S.C. § 2242(a) and Article II, section 3 of the United States Constitution by failing to appoint a three-member FCA Board between January 20, 2021 to January 20, 2025. (TAC, ¶¶ 145-159). Plaintiff contends that by failing to appoint a three-member FCA Board, the President caused him to lose statutory borrower rights, forced loan repayment, and made it so that he was unable to seek redress of these harms due. Plaintiff seeks a declaratory judgment that "President Biden, during his term from January 20, 2021 to January 20, 2025, violated 12 U.S.C. § 2242(a) and Article II, Section 3 of the United States Constitution by failing to appoint all positions on the FCA Board, as he was obligated and required to do pursuant to federal law." (TAC at 55-56 (Prayer for Relief)). According to Plaintiff, a declaratory judgment is necessary "to establish [the President's] inaction was unlawful and to guide future Executive action to prevent a recurrence of harm." (TAC ¶ 157).

9

Defendants argue Count One should be dismissed for lack of subject matter jurisdiction and failure to state a claim. (Doc. No. 56-1 at 8). Whether a court has subject-matter jurisdiction is a "threshold determination" in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). Thus, the Court begins there. Defendants argue that Plaintiff's claim for declaratory judgment does not present a justiciable case or controversy. Defendants argue Count One is nonjusticiable both because a declaratory judgment will not redress any harm alleged to be caused by the President and because it presents a nonjusticiable political question. (*Id.* at 9-11). Defendants are correct on both points.

Article III of the Constitution limits the jurisdiction of federal courts to adjudication of "cases" and "controversies." U.S. Const., Art. III, § 2. "To ensure that a case or controversy is before a court and to avoid rendering an advisory opinion, three basic requirements must be met." *Carman v. Yellen*, 112 F.4th 386, 499 (6th Cir. 2024). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of … Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (citations omitted). Each claim must satisfy Article III's requirements. *Id.* (citing *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008); *see also*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Plaintiff's claim for relief in Count One seeks a declaratory judgment that the President's failure to appoint a three-member FCA Board between January 20, 2021 and January 20, 2025 violated the law. Any such declaratory judgment would be an advisory opinion because it "could not affect the present relationship between the parties." *See Parrish v. Bennett*, 989 F.3d 452, 457

10

(6th Cir. 2021) ("[T]he complaint failed to present a justiciable case or controversy because plaintiff requested a ruling only on whether the past actions of defendants were right or wrong, which could not affect the present relationship between the parties. In other words, plaintiff sought only an advisory opinion from the district court as to whether its constitutional rights had been violated. The court therefore lacked an Article III controversy to adjudicate.").

Because Count One lacks an Article III controversy, the Court lacks subject matter jurisdiction over this claim and it will be dismissed.

Count One should also be dismissed because it presents a nonjusticiable political question. The political question doctrine is "essentially a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 217 (1962). The *Baker* Court formulated the test of whether a case presents a non-justiciable political question:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.*, 369 U.S. at 217. "Only one factor need be implicated to find a political question." *Grell v. Trump*, 330 F. Supp. 3d 311, 317 (D. D.C. 2018).

In *National Treasury Employees Union v. Bush*, 715 F. Supp. 405 (D. D.C. 1989), the District Court for the District of Columbia held that the plaintiffs' claims that then-President Bush violated his statutory duty to appoint a member to the three-member panel of the Federal Labor Relations Authority presented a nonjusticiable political question. Analyzing the *Baker* factors, the court considered that Article II of the Constitution "commits the power to appoint officers to the

11

President, acting with advice and consent of the Senate" and "makes no reference to any role of the judiciary in the appointment process." *Id*. at 407. The court also noted that the statute did not impose any time frame under which the President is required to make such appointments and the question of how much time should reasonably be permitted to evaluate and select nominees is "beyond the scope of judicial expertise" and the implications of requiring the President to make an appointment within specified time would have far-reaching implications. *Id*.

Defendants argue the same considerations apply here. The Court agrees. The statute does not impose a timeframe for the President to make appointments. *See* 12 U.S.C. § 2242. Indeed, the statute contemplates that successor members may not be appointed and qualified before current members' terms expire by providing that "member[s] of the Board shall continue to serve as such after the expiration of the member's term until a successor has been appointed and qualified." 12 U.S.C. § 2242(b). The matter of Presidential appointments to the FCA Board raises a nonjusticiable political question.

In sum, Count One will be dismissed for lack of subject matter jurisdiction because it does not present a justiciable case or controversy and presents a nonjusticiable political question.

## B. Count Two

In Count Two, Plaintiff asserts a claim against Jeffrey Hall, FCA Board Chairman, for violation of the Farm Credit Act. (FAC ¶¶ 160-177). Hall was appointed to the FCA Board by the President and confirmed by the Senate in 2015. (*Id*. ¶ 165). Although his original term expired in 2018, he has continued to serve in a holdover capacity. (*Id*. ¶¶ 167-68). Plaintiff claims Hall's prolonged service on the Board violates the Farm Credit Act and has caused him harm, including the loss of statutory borrower rights, economic injury from forced loan repayment, and the inability to seek redress due to the FCA's impaired enforcement capacity." (*Id*. ¶ 174). He seeks a

12

declaratory judgment "that Mr. Hall's service on the FCA Board beyond October 13, 2021 and up to present, constitutes an unlawful extension beyond the one-term limit of 12 U.S.C. § 2242(a), whether as a second, and now third, consecutive term or as an impermissible holdover in direct contravention of Congressional intent." (FAC at 56 (Prayer for Relief) and ¶ 177).

Defendants argue Count Two should be dismissed for failure to state a claim because the Farm Credit Act expressly permits Board members to holdover after their term expires, for lack of subject matter jurisdiction because it presents a nonjusticiable political question, because there is no private right of action to enforce the Farm Credit Act, and because Plaintiff lacks standing to sue to enforce the statute. The requirement of standing is essential to this Court's subject matter jurisdiction and, as discussed below, is dispositive of this claim. Accordingly, the Court begins and ends there.

"Although the term 'standing' does not appear in Article III, [the] standing doctrine is 'rooted in the traditional understanding of a case or controversy' and limits 'the category of litigants empowered to maintain a lawsuit in federal court[.]'" *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 861 (6th Cir. 2020) (quoting *Spokeo*, 136 S. Ct. at 1547). If a plaintiff does not have standing, the Court lacks subject-matter jurisdiction to hear the case. *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). The requirements of standing are discussed above with regard to Count One. *See supra*, III., A. (citing *Carman*, 112 F.4th at 499) (standing requires an injury in fact, traceable to the conduct of the defendant, and a likelihood that the injury will be redressed by a favorable decision). If "the Plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422-23 (2021).

13

Defendants argue that Plaintiff's claim that he was harmed by Hall remaining on the FCA Board in a holdover status amounts to a disagreement with the President's management of the FCA Board to allow Hall to remain in holdover status, which is not an injury. Plaintiff does not address Defendants' standing arguments as to Count Two. However, because there is some overlap between Counts One and Two (if the President had appointed new board members and they had been confirmed, Hall would not continue to serve in holdover status), the Court also considers Plaintiff's arguments in support of standing for Count One. (*See* Doc. No. 65 at 9). Plaintiff argues that the FCA Board is "unable to function properly in perpetual holdover status" which has caused him financial injury. (*Id*.). As for causation and redressability, Plaintiff contends that the failure to comply with Section 2242 "has directly impacted FCA oversight and enforcement" and a declaratory judgment would redress the injury "by prompting lawful appointments and restoring lawful agency structure." (*Id*. at 10).

Plaintiff's assertion of causation and redressability are too speculative to establish standing. Essentially Plaintiff claims that if Hall discontinued his Board membership and the President appointed new FCA Board members and the Senate confirmed those appointments, the new FCA Board would "function properly" and engage in more effective oversight and enforcement than the current Board. It is also possible to read Plaintiff's assertion of injury as based on the presence of holdover members on the Board and alleged lack of "lawful agency structure," but this does not assert any injury to Plaintiff. Moreover, Plaintiff's requested relief, a declaration that Hall's membership on the Board is unlawful, does nothing to redress any harm to Plaintiff. Even if the Court were to declare Hall's service on the Board unlawful, that would not redress Plaintiff's asserted injuries – "loss of statutory borrower rights, economic injury from forced loan repayment,

14

and the inability to seek redress." Accordingly, the Court finds Plaintiff does not have standing to assert the claim in Count Two and the claim will be dismissed.

## C. Count Three

Count Three is a claim against the Farm Credit Administration for negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. (TAC, ¶¶ 178-187). Plaintiff asserts the FCA Policies and Procedures Manual imposes a duty on the FCA to investigate borrower complaints within 60 days and that it failed to do so, instead taking 657 days. (*Id*. ¶ 180). Plaintiff further alleges that the FCA has a duty to "enforce borrower rights" under the Farm Credit Act and that it failed to enforce its findings against Alabama Farm Credit ACA ("AFC"), despite confirming violations. (*Id*.). Plaintiff claims the FCA's failure to timely investigate and failure to enforce violations allowed AFC to "escalate violations, forcing Plaintiff to pay off loans early and liquidate assets" and that these harms could have been prevented if the AFC had timely intervened and/or redressed after confirming violations. (*Id*. ¶ 181).

Plaintiff brings the negligence claim under the FTCA, which provides a limited waiver of sovereign immunity for tort claims against the United States in which "a private individual [would be liable] under like circumstances." *Myers v. United States*, 17 F.3d 890, 894 (6th Cir. 1994) (citing 28 U.S.C. § 2674). "The FTCA does not create a cause of action against the United States" or "provide a means of enforcing federal statutory duties." *Myers v. United States*, 17 F.3d 890, 894 (6th Cir. 1994) (citing *Howell v. United States*, 932 F.2d 915, 917 (11th Cir. 1991); and *Sellfors v. United States*, 697 F.2d 1362, 1365 (11th Cir.1983), cert. denied, 468 U.S. 1204 (1984)). To be actionable under the FTCA, a claim must allege that the United States "'would be liable to the claimant' as 'a private person' 'in accordance with the law of the place where the act or omission occurred.'" *F.D.I.C. v. Meyer*, 510 U.S. 471, 477 (1994) (citing 28 U.S.C. § 1346(b)).

Section 1346(b)'s "reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA.'" *Id.* at 478. The FTCA confers jurisdiction only to the extent that an alleged breach of duty is tortious under state law. *See Meyers*, 17 F.3d at 899-91.

Defendants argue the negligence claim must be dismissed because the FTCA does not apply and there is, therefore, no waiver of sovereign immunity. The Court agrees. Plaintiff's claim of negligence per se based on alleged failure to investigate borrower complaints within 60 days and failure to enforce borrower rights as required by the FCA and FCA policies and procedures does not fall under the FTCA because no comparable state-law duty exists. Plaintiff argues that "it is well settled that the FCA's failure to follow applicable statutes and regulations regarding borrower rights amounts to negligence per se." Plaintiff is correct on this point, but he points to no authority suggesting that the breach of duty alleged here is tortious under state law. As the Sixth Circuit explained in *Meyers*, negligence per se defines a standard of conduct but does not decide when a duty of care arises. *Meyers*, 17 F.3d at 899 (holding that "the existence of some relationship … to which state law would attach a duty of care in purely private circumstances is required under 28 U.S.C. § 2674"); *see also* 15A *Moore's Federal Practice*, § 105.26[7][a] (Matthew Bender 3d Ed.) ("A claim under the FTCA cannot be brought for violations of federal states that create federal causes of action when there is no analogous state law. The FTCA was not intended as a mechanism for enforcing federal statutory duties … An allegation of breach of federal law duty alone does not state a valid tort claim against the federal government under the FTCA.").

Alternatively, Plaintiff argues that by undertaking to investigate Plaintiff's complaint it was obligated to exercise due care. (Doc. No. 65 at 16-17) (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 64-69 (1955); and *Ingham v. Eastern Air Lines*, 373 F.2d 227, 236 (2d Cir. 1967)). Plaintiff asserts that "FCA's failure to act with reasonable care in pursuing [the]

16

investigation and responding to known violations gives rise to liability under the assumption of duty doctrine." (*Id*. at 17). Although an assumption of duty may arise under some circumstances, the cases relied upon by Plaintiff do not suggest that such circumstances are present here. *Indian Towing* and *Ingham* concern an assumption of a duty of care with regard to the physical safety of others, which is not remotely similar to the duty of care Plaintiff seeks to impose here. *Indian Towing* addressed liability of the Coast Guard related to lighthouse services – "once it exercised its discretion to operate a light … and engendered reliance on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order." 350 U.S. at 69 (rejecting an exception from liability for all official conduct furthering a unique government activity). In *Ingham*, the Federal Aviation Agency (FAA) violated an assumed duty of care when it failed to inform an incoming aircraft that visibility had dropped. 373 F.2d at 236.

Defendants argue that the allegations in the TAC do not suggest that FCA assumed a duty to investigate complaints within 60 days. (Doc. No. 56-1). The Court agrees. Indeed, the TAC states that FCA repeatedly told Plaintiff that it had a "goal" to respond to borrower complaints within that timeframe, but that the time to investigate depends on the complexity of the complaint and the need to obtain additional information. (*See* TAC ¶¶ 98, 115-120, 123, 125, 129, 212). Nothing in the statute, regulations, or FCA's communications to Kittle suggests that FCA assumed a duty to finalize the investigation of complaints within 60 days regardless of the complexity of the investigation. Further, any consequences of the duration of the investigation were effectively moot after Plaintiff paid off his loans to AFC on December 1, 2021, just over three months after submitting his complaint to the FCA. (*See* TAC ¶ 112). As for the response to known violations, as discussed below, FCA's decision on how to use its enforcement authority is discretionary. *See* 12 U.S.C. § 2261(a) ("the Farm Credit Administration *may* issue and serve upon the institution or

such director, officer, employee, agent, or other person a notice of charges in respect thereof") (emphasis added); *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (The Supreme Court "has recognized on several occasions over many years that an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."); *see also infra* Section D.

Because the alleged breach of duty to comply with FTC policies regarding the length of time in which an investigation should be complete is not tortious under state law, Plaintiff's claim does not fall under the FTCA waiver of sovereign immunity and the negligence claim will be dismissed.

## D. Count Four

In Count Four, Plaintiff alleges that FCA and Hall deprived him of property interests without due process in violation of the Fifth Amendment. (TAC ¶¶ 188-195). Plaintiff asserts a protected property interest in "statutory rights under the Farm Credit Act of 1971, including the right to fair credit consideration, protection from retaliation, and equitable treatment by System institutions, as well as in his farm assets and equity, access to credit, and Class A Voting Stock, which he was forced to liquidate to avoid wrongful foreclosure."[6] (TAC ¶ 190). Plaintiff contends FCA and Hall deprived him of these property interests without due process by "failing to enforce the Farm Credit Act and Equal Credit Opportunity Act (15 U.S.C. § 1691) against Alabama Farm Credit, despite finding numerous violations of Plaintiff's rights, and by delaying a response to Plaintiff's borrower compliant for 657 days, forcing Plaintiff to pay off his loans to avoid foreclosure." (*Id*. ¶ 191). Plaintiff claims the FCA's lack of a formal administrative process for

---

[6] The TAC also asserts Count Four against Wendy Laguarda, former Inspector General of the FCA. However, Plaintiff concedes dismissal of the claims against the Inspector General, including Count Four. (*See* Doc. No. 65 at 2, n.1).

reviewing borrower complaints and "refusal to provide meaningful relief or enforcement" denied him any "adequate procedural mechanism to protect his property interests" and violated his right to due process.

Defendants argue the Court is without jurisdiction to hear the claims in Count Four because neither the Constitution nor the FCA confer jurisdiction or waive the sovereign immunity of the United States. (Doc. No. 56-1 at 20). Plaintiff responds that the United States may be sued for constitutional violation where there is a waiver of sovereign immunity or where ultra vires conduct is alleged and that here the claim is "rooted in FCA's failure to follow legally required procedures and provide fair process to borrower complaints." (Doc. No. 65 at 23 (citing *Leedom v. Kyne*, 358 U.S. 184 (1958)). Plaintiff contends these claims are within the Court's jurisdiction under 28 U.S.C. § 1331. (*Id*.).

Defendants are correct that there has been no waiver of sovereign immunity for the claims in Count Four. Constitutional claims do not themselves waive sovereign immunity. *See Com. of Ky. ex rel. Hancock*, 362 F. Supp. 360, 368 (W.D. Ky. 1973) ("Although the plaintiff also invokes the Fifth, Ninth and Fourteenth Amendments to the Constitution of the United States, it is settled beyond doubt that constitutional provisions have no effect upon the sovereign immunity from suit."); *Toledo v. Jackson*, 485 F.3d 836, 838 (6th Cir. 2007) (holding that plaintiff must identify a waiver of sovereign immunity to proceed with a claim under 28 U.S.C. § 1331). Plaintiff is correct that sovereign immunity does not apply to ultra vires conduct, but notwithstanding his assertions to the contrary, Plaintiff has not alleged such conduct here. His claims that Defendants failed to take enforcement action and delayed resolution of his complaint do not allege conduct that exceeds the FCAs statutory power. Indeed, although Plaintiff separately seeks mandamus relief to compel the FCA to enforce the ECOA against AFC, Plaintiff acknowledges that the FCA

19

lacks authority to provide personal relief for the AFC's violation of the ECOA and that no private cause of action is available under the ECOA against the FCA for its inaction. (TAC ¶ 203).

Plaintiff contends that 15 U.S.C. § 1607(5) imposes on the FCA a non-discretionary duty to Plaintiff as an affected borrower to exercise its enforcement authority whenever it finds a violation of the ECOA.[7] The cited statutory provision imposes no such obligation; it is merely a delegation of enforcement authority to various agencies. *See Vallies v. Sky Bank*, 591 F.3d 152, 156 (3d Cir. 2009) (15 U.S.C. § 1607 "provides other federal agencies with enforcement power"); *McKenna v. First Horizon Home Loan Corp*., 475 F.3d 418, 426 (1st Cir. 2007) ("The statute grants substantial enforcement authority to the federal agencies with jurisdiction over lending institutions." The statue provides:

> **(a) Enforcing agencies**
> Subject to subtitle B of the Consumer Financial Protection Act of 2010, compliance with the requirements of this subchapter shall be enforced under –
> …
> (5) the Farm Credit Act of 1971, by the Farm Credit Administration with respect to any Federal land bank, Federal land bank association, Federal intermediate credit bank, or production credit association; …

15 U.S.C. § 1607.

Moreover, the FCA provides that any enforcement action by the FCA is discretionary. *See* 12 U.S.C. §§ 2261(a) (stating that if the FCA has reasonable cause to believe that an institution has violated an FCA law, rule, regulation or written condition, the FCA "*may* issue and serve upon the institution … a notice of charges in respect thereof"). *See also*, *Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (The Supreme Court "has recognized on several occasions over many years that

---

[7] The ECOA makes it unlawful for a creditor to discriminate against an applicant with respect to any aspect of a credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age, or because the applicant's income derives from a public assistance program, or because the applicant has exercised any rights under the ECOA. 15 U.S.C. § 1691(a).

an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."); *Pendleton v. Trans Union Sys. Corp.*, 430 F Supp. 95, 97 (E.D. Pa. 1977) ("Because enforcement is essentially discretionary, courts repeatedly have refused to require prosecutors or agencies to investigate particular alleged violations or institute proceedings against certain persons… Even statutory language stating that compliance with the Act shall be enforced by the FTC is not sufficient to withdraw the usual prosecutorial discretion.") (citing cases).

Because the United States has not waived sovereign immunity and Plaintiff has not plausibly alleged ultra vires conduct on the part of the FCA or Hall, the due process claim will be dismissed.

## E. Count Five

In Count Five, Plaintiff seeks mandamus to compel FCA to enforce ECOA compliance against AFC. (TAC ¶¶ 196-204). Under 28 U.S.C. § 1361, the district courts have jurisdiction to compel an officer or employee of the United States to perform a duty owed to the Plaintiff. Plaintiff contends "enforcement" to correct ECOA violations is a duty owed to Plaintiff as an affected borrower.

"Mandamus is available only if: (1) the [petitioner] has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the [petitioner]." *Rimmer v. Holder*, 700 F.3d 246, 264 (6th Cir. 2012) (quoting *Carson*, 633 F.3d at 491). Mandamus relief is a "drastic" remedy, "to be invoked only in extraordinary situations." *Carson*, 633 F.3d at 491 (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980)). It "is not an appropriate remedy if the action that the petitioner seeks to compel is discretionary." *Id.* (citing *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). Mandamus is not appropriate here because

the relief sought – enforcement action by FCA against AFC – is discretionary. *See supra*, sections C and D.  Accordingly, this claim will be dismissed.

## F.  Count Six

In Count Six, Plaintiff brings a claim for breach of fiduciary duty against FCA, asserting that FCA owes a "fiduciary-like duty" to system borrowers, including Plaintiff, to "ensure the Act's borrower rights are enforced." (TAC ¶¶ 205-06). Plaintiff contends FCA breached this "fiduciary-like duty" by "failing to act on known violations and to establish a complaint process." (*Id*. ¶ 207).

Defendants argue this claim is "simply a reformatted version of Plaintiff's other attacks on the FCA," and should be dismissed because there is no private right of action under the Farm Credit Act and the FCA does not owe a fiduciary duty to Plaintiff. Defendants argue that even if there were a fiduciary duty, Plaintiff's allegations do not allege a breach of fiduciary duty because the FCA has established a complaint process (as stated in the TAC ¶¶ 61-63, 66-67),[8] and enforcement decisions are committed to agency discretion.

Plaintiff relies upon *United States v. Mitchell*, 463 U.S. 206 (1983) for the proposition that agencies may owe a fiduciary duty. *Mitchell* concerned the fiduciary responsibilities of the United States in managing forests and property belonging to Native Americans. 463 U.S. at 225 ("Where the Federal Government takes on or has control or supervision over tribal monies or properties, the fiduciary relationship normally exists with respect to such monies or properties (unless Congress has provided otherwise)…")(quoting *Navajo Tribe of Indians v. United States*, 624 F.2d 981, 987 (Ct Cl. 1980)). In finding a fiduciary relationship, the *Mitchell* court also noted "the

---

[8]      *See* TAC, Doc. No. 53, ¶ 57 (discussing FCA's enforcement options); ¶ 59 (borrower complaint process is not "detailed"); ¶ 60 (borrower complaint process is "informal"); ¶ 61 (borrowers "may submit a complaint"); ¶ 61 (details the complaint process); ¶¶ 66-67 (describing FCA's policy of keeping complainant informed).

undisputed existence of a general trust relationship between the United States and the Indian people." *Id*. at 225. The same cannot be said for the relationship between the FCA and system borrowers.

Because Plaintiff fails to state a claim for breach of fiduciary duty, Count Six will be dismissed. In the alternative, the Court declines to exercise supplemental jurisdiction over this claim. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.").

## G. Counts Seven through Ten

Counts Seven through Ten allege various violations of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(1). "The APA sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Haines v. Federal Motor Carrier Safety Admin.*, 814 F.3d 417, 423-24 (6th Cir. 2016); 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."). The reviewing court may: "(1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions [under certain conditions]." 5 U.S.C. § 706.

The APA explicitly excludes judicial review of agency action "to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." *Riverkeeper, Inc. v. Collins*, 359 F.3d 156, 164 (2d Cir. 2004) (citing *Chaney*, 470 U.S. at 828). "[E]ven where Congress has not affirmatively precluded review," section 701(a)(2) forecloses review "if the statute [governing the agency's actions] is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the

statute ('law') can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely." *Id.* "[A]mong those agency actions presumptively exempted from judicial review by section 701(a)(2) agency decisions not to institute a particular enforcement action." *Id.* (citing *Chaney*, 470 U.S. at 828).

Plaintiff's claims in Counts Eight and Ten are based on FCA's failure to take enforcement action against ACA for its violations of the Farm Credit Act or ECOA. (TAC ¶¶ 218, 231). Plaintiff claims the failure to enforce borrower protections demonstrates arbitrary and capricious decision-making and abdication of statutory responsibilities in violation of § 706(1) and (2)(A). (*Id.* ¶¶ 220, 233). Plaintiff seeks declaratory and injunctive relief requiring the FCA to take enforcement action against ACA. (*Id.* ¶ 222). Because these claims seek review of discretionary action, they are not reviewable under the APA. Therefore, Counts Eight and Ten will be dismissed.

Counts Seven and Nine concern the FCA's process for reviewing Plaintiff's borrower complaints. Specifically, in Count Seven Plaintiff complains that the FCA did not resolve his borrower complaint within 60 days and that the "prolonged and unjustifiable delay in investigating and enforcing borrower protections constitutes an unreasonable withholding and unreasonable delay of agency action in violation of the APA, 5 U.S.C. § 706(1)." (TAC ¶ 212-214). In Count Nine, Plaintiff claims that the FCA's failure to establish a transparent administrative process for handling borrower complaints and enforcement of borrower rights deprived him of due process in violation of § 706(2)(D). (TAC ¶ 225-26). Plaintiff seeks an order "compelling FCA to establish and enforce a process for timely and effective resolution of borrower complaints" and "requiring the FCA to establish and adhere to clear administrative procedures for handling borrower complaints and enforcing borrower protections." (*Id.* ¶¶ 215, 228).

Defendants argue these claims should be dismissed for several reasons including, inter alia, that Plaintiff lacks standing. Defendants contend that Plaintiff cannot show that his injury is traceable to FCA's alleged delay in resolving his complaints or lack of enforcement action against AFC. They argue that the allegations in the TAC instead show that Plaintiff caused harm to himself when "Plaintiff (himself an agricultural attorney), of his own free will, decided that it was in his best interest to pay off his loans with AFC (thus causing his exclusion from the Farm Credit System since he was no longer a borrower), and to liquidate his assets and sell his home, just over 3 months after submitting his complaint to the FCA and just 3 weeks after AFC placed his loans in distress." (Doc. No. 56-1 at 38 (citing TAC ¶¶ 96, 105, 112, 134, and PageID# 964) (emphasis in original)).

Plaintiff responds that causation and redressability are satisfied because his injuries are traceable to FCA's "failure to timely investigate and act upon admitted borrower rights violations." (Doc. No. 65 at 34). Plaintiff argues the fact that he "took independent financial actions (e.g., paying off loans, selling assets) does not break the causal chain where those actions were a foreseeable and direct result of the agency's inaction in the face of known violations." (*Id*. at 35).

The requirements of standing are discussed above with regard to Counts One and Two. *See supra*, III., A and B. (citing *Carman*, 112 F.4th at 499) (standing requires an injury in fact, traceable to the conduct of the defendant, and a likelihood that the injury will be redressed by a favorable decision). If "the Plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422-23 (2021).

The Court agrees that Plaintiff lacks standing to assert the claims in Counts Seven and Nine which concern the FCA's review of his borrower complaints. First, the allegations in the TAC do not raise a plausible inference that Plaintiff's decision to sell assets and pay off his loan were a

foreseeable and direct result of the agency's delay in reviewing his complaint. Nor can it be said that FCA's review of the complaint, which at that time had been only been pending for about 90 days, was unreasonably delayed. Equally importantly, the FCA has now completed the review of Plaintiff's complaints, therefore any order requiring the FCA to complete the review or improve its internal processes to make the review faster would not redress any harm to Plaintiff.

In this regard, the Court notes that in the FAC, Plaintiff identifies himself has a "former borrower, pending applicant, and prospective future borrower" of the Farm Credit System. (TAC ¶ 9). Plaintiff does not argue that he may have additional complaints against a Farm Credit System institution at some future date and that those future complaints would not be reviewed within a reasonable time.[9] In any event, such claims speculative claims would not confer standing.

## IV.    CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (Doc. No. 56) is **GRANTED** as to all claims. An appropriate Order will enter.

WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[9]       Although Plaintiff alleges that as of the filing of the TAC, "a decision by AFC still has not been made on Mr. Kittle's pending refinance from August 2021" (TAC ¶ 137(a), n. 2), the FCA acknowledged as much in its review of Plaintiff's complaints. (TAC ¶¶ 130, 137).

26